# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1651V
UNPUBLISHED

| | |
|---|---|
| ROBERT R. JODOIN,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: December 19, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Christine M. Smith, Law Office of Christine M. Durant, PLLC, Manchester, NH,* for Petitioner.

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC,* for Respondent.

### **FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CASE**[1]

On October 24, 2019, Robert R. Jodoin filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he sustained a shoulder injury related to vaccine administration ("SIRVA"), as a direct and proximate result of an influenza ("flu") vaccination he received on October 26, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons stated below, I conclude that Petitioner has not established by preponderant evidence that the onset of his shoulder pain occurred within 48 hours of his October 26, 2016 vaccination.

## I.   Relevant Procedural History

Mr. Jodoin filed his petition for compensation on October 24, 2019. ECF No. 1. Petitioner filed relevant medical records and a Statement of Completion by July 31, 2020. ECF Nos. 22, 25, 27. On March 29, 2021, Respondent filed his Rule 4(c) Report concluding that compensation was not appropriate in this case. Respondent's Report at 1. ECF No. 32. First, Respondent asserted that Petitioner's "vaccination record states that his October 26, 2017 flu vaccination was administered in his **left** shoulder, but he is alleging that the flu vaccine caused a right shoulder injury." *Id.* at 6 *citing* Ex. 1 at 2 (emphasis in original). Next, Respondent maintained that "[P]etitioner's records similarly do not show that his shoulder pain started within forty-eight hours of vaccination." *Id.* Finally, Respondent indicated that "[w]hile a petitioner can also proceed on a causation-in-fact basis for an alleged non-Table injury, [P]etitioner has not alleged a causation-in-fact claim." *Id.* at 7 *citing* 42 U.S.C. § 300aa-11(c)(1)(C). Respondent recommended that the petition be dismissed. *Id.* at 7.

On April 8, 2021, Mr. Jodoin subsequently filed two additional affidavits, from his daughter and his own supplemental affidavit. ECF Nos. 34-35. Also on April 8, 2021, Mr. Jodoin filed a Motion for a Ruling on the Record (Motion). ECF No. 36. Petitioner moved for a "ruling on the written record finding that his right shoulder injury and its sequela were the result of his flu vaccination." Motion at 2. On April 22, 2021, Respondent filed a response to Petitioner's motion. (Resp.) ECF No. 37. On April 27, 2021, Mr.Jodoin filed a reply to Respondent's response. (Reply) ECF No. 39.

The matter is now ripe for adjudication.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition as set forth in Section 11(c)(1).  A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.  Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the

2

balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La*

*Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3) and Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Relevant Factual Evidence

I have fully reviewed the evidence pertaining to the onset question, including all medical records, affidavits, Respondent's Rule 4(c) Report, and the parties' briefs, and find most relevant the following:

- Mr. Jodoin was administered a flu vaccine on October 26, 2016. Ex. 2 at 1. The vaccine administration record states that the vaccination was administered intramuscularly in Petitioner's left upper arm. *Id.* In his affidavit, Petitioner asserts that "[t]he medical record states that I received the injection in my left arm but this is incorrect. I received it in my right arm." Petitioner's Affidavit at 1.

- At the time of the vaccination, Mr. Jodoin asserts that he had a noncontributory past medical history or any other condition that would explain his symptoms. Petition at 2.

- In his affidavit, Mr. Jodoin avers that on October 26, 2016, he started having a deep ache in his right deltoid muscle shortly after the injection. Petitioner's Affidavit at 1.  He states, "[i]t was a pain I thought would go away in a few days. I continued to have the dull ache in my arm for several weeks but it did not interfere with my life so I did not seek medical care. I still believed that it would go away." *Id.*

- On November 15, 2016 (now approximately twenty days after vaccination), Mr. Jodoin contacted his primary care provider (PCP), Advanced Practice Registered Nurse (APRN) Kendra Cline. Ex. 3 at 22. According to the phone note, "[Petitioner] dropped off paperwork that he needs filled out for the Coast Guard." *Id.*

- An "Application for Merchant Mariner Medical Certificate" was furnished to Nurse Cline for completion. Ex. 3 at 22, 54-58. Certain sections of the form were to be completed by the Applicant (Mr. Jodoin) and certain sections of the form were to be completed by the Medical Practitioner. *See id.* at 54-58. On that form, Mr. Jodoin represented that he did not have any "[f]ractures, recurrent dislocations or limitation of motion of any joint" or "[a]ny diseases, surgeries, cancers, or disabilities not listed on this form." *Id.* at 54.

- By signature dated November 15, 2016, Nurse Cline conducted a physical examination and completed the "Physical Examination" portion of the form. Ex. 3 at 57-58. Nurse Cline indicated that all systems/organs were "normal," including "upper/lower extremities" and "spine/musculoskeletal." *Id.* at 57. The instructions on the form state that "the Medical Practitioner shall require that the applicant

4

demonstrate the ability to meet the guidelines contained within Section VII of the CG-719K." *Id.* Respondent included the instructions for the form as Respondent's Exhibit A. Nurse Cline affirmatively checked that "Applicant has the physical strength, agility, and flexibility to perform all of these items listed in the instruction table." Ex. 3 at 58.

- On January 3, 2017, ten weeks after his flu vaccination, Mr. Jodoin called his PCP stating, "He needs to be seen for right arm pain that has been going on since he got a flu shot *8 weeks ago*. He feels he is losing strength and has had lots of deep pain with certain movements of the arm." Ex. 3 at 20 (emphasis added).

- The next day, on January 4, 2017, Mr. Jodoin saw his PCP with a chief complaint of "[right] arm losing strength and deep pain w/ certain moves x 8 weeks." Ex. 3 at 3. Petitioner's history states, "This is a pleasant 64 year old male patient who presents with c/o pain to his upper right arm. He states he had a flu shot given there about 6 weeks ago and has caused him pain and decreased strength and decreased ROM since the shot. He does have some tingling in his hand, but has it bilaterally and believes it may be unrelated." *Id.* Petitioner was instructed to use heat and anti-inflammatories for pain and start physical therapy for evaluation and strengthening, and if his symptoms continued to consider a referral to orthopedics or other imaging. *Id.* at 6. Petitioner was referred to physical therapy (PT) for "right arm pain and weakness post flu shot 6 weeks ago." Ex. 4 at 34.

- On January 7, 2017, Mr. Jodoin completed an Outpatient Rehabilitation Services Medical History form. Petitioner indicated that he presented for treatment for "pain in right arm muscle - SIRVA," and indicated that he was experiencing pain with "certain arm movements." Ex. 4 at 32-33.

- Mr. Jodoin received a PT evaluation on January 9, 2017. Ex.4 at 35. He began PT on January 9, 2017, where the physical therapist observed signs of impingement and tenderness along the right biceps. Petitioner's primary diagnosis was right arm pain, and the assessment states, "[patient] is a 64 y/o male who reports progressive [right] shoulder pain following a flu shot on 10/26. He presents [with positive] impingement signs, [illegible] [at] bicep origin and decreased strength." *Id.* Petitioner's "Problem List" indicates decreased ROM, decreased strength, pain, disturbed sleep, impaired reaching, lifting, carrying, poor postural alignment/ scapular stability, increased risk of reoccurrence, impaired ADLs and/or home management, DASH/UEFS score. *Id.* Additionally, Petitioner's chief complaint is noted as: "Oct. 26th [patient] has a flu shot [at] Rite Aid. [Patient] reports injection was high on shoulder. Since injection [patient] has had continued pain [with] daily tasks." *Id.* at 36. PT services were ordered for two times per week for six weeks. *Id.* at 43.

- According to a Physical Therapy Progress Report, dated February 20, 2017, Mr. Jodoin reported that his pain was still the same since the initial evaluation at 3-4/10 with complaints of deep muscle pain. *Id.* at 46. The recommendation was

5

for a "follow up visit to see if the [patient] is appropriate for cortisone injection to the right shoulder at this time." *Id.*

- On March 17, 2017, Mr. Jodoin presented to Scott Evans, P.A. at New Hampshire Orthopaedic Center for "right shoulder pain that he has been having for the past six months." Ex. 6 at 12. It was further noted that Petitioner had gone through therapy and continued to have right shoulder pain with no improvement. *Id.* P.A. Evans' assessment was "right shoulder pain, unspecified chronicity and recommended that Petitioner obtain an MRI. *Id.*

- On May 17, 2017, Petitioner presented to Gary Perlmutter, M.D., an orthopedist at Massachusetts General Hospital, for further evaluation. Ex. 5 at 16. The progress notes from that visit states, "[i]n October of last [year] the patient had a flu shot and noted acute onset of right shoulder pain following the shot. He denies any shoulder symptoms prior to the vaccine. Pain is located laterally throughout the arm, worse with use, improve with rest. Deep aching and sharp at times." *Id.* Dr. Perlmutter's assessment was right rotator cuff tendinitis/bursitis/impingement, and recommended performing a right subacromial steroid injection, and the injection was performed in office. *Id.* at 17.

- On October 27, 2017, Mr. Jodoin presented to Dr. Robert J. Larkin for a Welcome to Medicare visit. Ex. 7 at 23. Petitioner noted several concerns including being "plagued by sore right shoulder with limited range of motion for the past year. He has associates [sic] with a flu injection that he got last year and he thinks got [sic] into the bursa and is causing problems. He was seen by Ortho in Boston who wants an MRI done." *Id.* An MRI for his right shoulder pain was ordered at this visit. Ex. 4 at 176.

- Mr. Jodoin underwent an MRI on his right shoulder on November 20, 2017. Ex. 4 at 116. The MRI revealed: "1. Tear along the supraspinatus footprint. Although the tear primarily resides within the intrasubstance and bursal surface, portions of the tear extending to the articular surface. 2. Partial tear of the distal superior subscapularis. 3. Linear split-thickness tear of the distal intra-articular biceps tendon. Partial intrasubstance tear of the proximal extra-articular biceps tendon. 4. Tears of the glenoid labrum as described above. 5. Mild to moderate narrowing of the lateral outlet. 6. No abscess seen." *Id.* at 117.

- On January 3, 2018, Petitioner returned to Dr. Perlmutter for acute bursitis of the right shoulder. Ex. 5 at 5. The progress note from that visit states, "Patient returns following an injection 8 months ago which offered him several weeks of improvement. However his pain is returning. The pain is located anterolaterally with radiation laterally down his arm. Worse with use improve with rest. Deep aching. Limits his ability to sleep. Moderate in intensity. Recently underwent an MRI scan as ordered by his primary care physician." *Id.* Dr. Perlmutter's assessment was right rotator cuff tendinitis/bursitis and partial biceps tendon tear. *Id.* at 6. The Plan states, "Given his symptoms and the fact that he is a snowboarder, he wishes to hold off for any further treatment at this point in time. I

6

do not believe any further injections. Predictably afford him long-term improvement. The next step would be to consider surgery. He will return to my office with a MRI disc that opens up so I can see the images myself. Based on the report, surgical procedure of choice should be a right shoulder arthroscopy, debridement, acromioplasty, and possible biceps tenotomy. He agrees with this plan." *Id*.

- Mr. Jodoin filed an affidavit from his daughter, who is a licensed physical therapist. *See* Ex. 10. Petitioner daughter asserts that "in October 2016, my father told me that he had pain in his right arm after receiving a flu vaccination. My medical advice to my father at that time was that pain can be normal after a vaccination, that it should resolve, and that at this time it did not require medical attention. In late December of 2016 my father had difficulty using his right arm and it impacted his activities of daily living. At that time, I told him it was time to seek medical care." *Id*.

## IV.     Findings of Fact

I acknowledge that the standard applied to resolving onset for an alleged SIRVA is liberal, and will often permit a determination in a petitioner's favor, especially in the absence of fairly contemporaneous and direct statements within the petitioner's medical records to the contrary. However, not every case can be so preponderantly established. Ultimately, the resolution of such fact issues involves weighing different items of evidence against the overall record.

This case presents several issues regarding Petitioner's success in establishing onset consistent with the Table's 48-hour requirement. First, there is a ten-week records gap from vaccination to first efforts to treat Petitioner's alleged shoulder pain. While a delay in seeking treatment is not a bar to a favorable onset finding (and more often than not is only relevant to severity), it can be a significant issue clouding the picture, since time has passed without treatment.

Second, the gap herein is compounded by varying reports of onset at the time Petitioner initially reported his injury on January 4, 2017. Thus, it was initially noted that Petitioner's office visit was for "[right] arm losing strength, deep pain w/ certain movements ***x 8 weeks***." Ex. 3 at 76 (emphasis added). Then, under the "History of Present Illness" it is documented that Petitioner "states he had a flu shot given there ***about 6 weeks ago*** and has caused him pain and decreased ROM since the shot." *Id*. (emphasis added). Neither is consistent with the actual date of vaccination. While these statements alone are not disproving, they are not fully consistent with Table onset.

More significantly, however, the treatment gap features an intervening medical visit between vaccination and Petitioner's first report of post-vaccination shoulder pain. On

November 15, 2016, approximately *two weeks* post vaccination, Nurse Cline completed Petitioner's Application for Merchant Mariner Medical Certificate, in which she certified that Petitioner had the physical strength, agility, and flexibility to perform the items listened on the instruction table. Ex. 3 at 58. Some of the items listed on the instruction table include, "[i]s able, without assistance, to climb up and down vertical ladders and stairways"; "[i]s able, without assistance, to open and close watertight doors that may weigh up to 55 pounds (25 kilograms); should be able to move hands/arms to open and close valve wheels in vertical and horizontal directions; rotate wrists to turn handles; able to reach above shoulder height"; "Is able, without assistance, to lift at least a 40 pound (18.1 kilograms) load off the ground, and to carry, push, or pull the same load"; "Is able, without assistance, to pull an uncharged 1.5 inch diameter, 50' fire hose with nozzle to full extension, and to lift a charged 1.5 inch diameter fire hose to fire fighting position." Respondent's Ex. A at 2.

Petitioner's medical condition, as documented on this form, undermines contentions that he was then experiencing shoulder pain associated with vaccination. Some of the abilities mentioned on the table require sound shoulder strength, agility, and range of motion, and are not consistent with the immediate and acute onset of pain as reported by Petitioner. *See* Petitioner's Affidavit at 1; Ex. 4 at 34-35, Ex. 6 at 12. Moreover, Petitioner represented on that form that he did not have any "Fractures, recurrent dislocations or limitation of motion of any joint" or "Any diseases, surgeries, cancers, or disabilities not listed on this form" and his PCP indicated that all systems/organs were "normal," including "upper/lower extremities" and "spine/ musculoskeletal" systems. *Id.* at 54, 57.

Petitioner has attempted to remedy what appears to be a discrepancy on the form (*i.e.*, the form does not mention any abnormalities or conditions, but at the same time Petitioner is experience acute pain from the flu vaccine two weeks prior) stating, "he believed that the pain was muscular in nature and that it would take time to resolve. He did not believe the pain to be related to a joint as he was not yet experiencing arm weakness or a decrease range in motion . . . . The Coast Guard application was answered honestly that at that point in time he did not experience joint pain or limitation in the use of his arm." Motion at 2.

Respondent, by contrast, argues that Petitioner's explanation "ignores that [P]etitioner was asked to identify all conditions on the Merchant Mariner form, not just those impacting his range of motion, and Ms. Cline was also required to perform a full examination and document any conditions present. Indeed, the form requires a medical examination to address the very argument petitioner now offers, selective reporting of conditions by an applicant. *See* Ex. A at 1 (instructions for Section II (a)(b), directing the

8

Medical Practitioner to also report any conditions not reported by the applicant but discovered by the medical practitioner and to describe those conditions). The form also makes clear that all abnormalities are to be reported, as the Medical Practitioner could explain whether those abnormalities would actually impact the applicant's ability to perform certain tasks. (Sections VI and VII). These forms make clear that [P]etitioner did not identify any right arm pain, and Ms. Cline did not observe any after conducting a full and complete examination. *See* Ex. 2 at 56-58."

Respondent's contention on the significance of this intervening record is persuasive. While Petitioner's statement may provide an explanation for not reporting joint pain or a problem with range of motion, it does not explain his upper/lower extremities and spine/musculoskeletal being noted as "normal," nor does it explain no other conditions or abnormalities otherwise being reported on the form. Moreover, the form does not affirmatively support that Petitioner experienced an immediate onset of shoulder pain following the flu vaccination.

Additionally, what Petitioner reported to his physicians and medical practitioners, to some extent, conflicts with the aforementioned form and Petitioner's statements regarding onset. Petitioner maintains that he "started having a deep ache in [his] right deltoid muscle shortly after[3] the injection," and at time of the form's creation and for weeks after the vaccination, he only had a "dull ache" in his arm that "did not interfere with [his] life . . . ." Petitioner's Affidavit at 1. However, at his January 4, 2017 visit, Petitioner reported to Nurse Cline that the flu vaccination "has caused him pain and decreased strength and decreased ROM *since the shot.*" Ex. 3 at 2 (emphasis added).

Then, at his January 9, 2017 PT evaluation, Petitioner reported that since the vaccination, "patient has had continued pain with daily tasks." Ex. 4 at 36. And, on May 17, 2017, at his appointment with Dr. Perlmutter, Petitioner "noted acute onset of right shoulder pain following the shot." Ex. 5 at 16. It is noteworthy that at some point on, or prior to, January 7, 2017, Petitioner learned about SIRVA, which he indicated was his reason for presenting to PT on the Outpatient Rehabilitation Services Medical History form. *See* Ex. 4 at 32. Prior to January 3, 2017, there is no documented evidence of Petitioner's shoulder pain, specifically not prior to November 15, 2016, at the time of his Merchant Mariner Medical certification. In fact, all references to immediate and acute pain occurred after Petitioner reporting he had a SIRVA.

This evidence in its totality is insufficient to find that Petitioner's symptoms began within 48 hours of vaccination. *See,* e.g., *R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2015 WL 10936123, at *76 (Fed. Cl. Spec. Mstr. Sept. 28, 2015) (finding that more

---

[3] Petitioner does not provide any specific date or time to define "shortly after."

9

remote histories of illness did not have sufficient indicia of reliability to be credited over conflicting contemporaneous medical records); *see also Vergara v. Sec'y of Health & Human Servs.*, 08-882V, 2014 WL 2795491,*4 (Fed. Cl. Spec. Mstr. May 15, 2014) ("[s]pecial Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recorded in later medical histories, affidavits, or trial testimony.").

A careful review of the record, supplemented by sworn witness statements, may permit a determination that a petitioner's shoulder pain began within 48 hours after the vaccination. However, not every petitioner can make such a showing, particularly in the face of contemporaneous conflicting medical records reflecting his own endorsements of no pain after undergoing a full examination and a sworn statement that he did not have any medical conditions as of November 2016.

I find Petitioner has not preponderantly established that onset of his pain likely occurred within 48 hours of vaccination – meaning that he cannot proceed in this action with his Table SIRVA claim.

## CONCLUSION

**Petitioner's Table SIRVA claim is dismissed. In light of the instant ruling, I will proceed with transferring Petitioner's case out of SPU and will randomly reassign the case to a special master to conduct further proceedings to establish (1) situs; and (2) whether Petitioner has demonstrated an off-Table case for some kind of injury. Petitioner may file an amended petition pleading an off-Table injury. Petitioner's amended petition is due by no later than Tuesday, February 21, 2023.**

**IT IS SO ORDERED.**

> s/Brian H. Corcoran
> Brian H. Corcoran
> Chief Special Master